**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY
378 N. Main Ave.
Tucson, AZ 85701,

Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460,

Defendant.

Civ. No.: 16-1791

**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

## I. INTRODUCTION

1. This action challenges the failure of Defendant United States Environmental Protection Agency ("EPA") to comply with its obligation under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, to respond to Plaintiff Center for Biological Diversity's ("Center") petition within a reasonable timeframe. The petition requested the amendment of water quality criteria and publication of additional guidance to address the problem of ocean acidification under Section 304 of the Clean Water Act, 33 U.S.C. § 1314.

2. The Center submitted its petition to EPA regarding the amendment of water quality criteria and publication of guidance on April 17, 2013. Now, more than three years later EPA has failed to answer the Center's petition.

3. Ocean acidification is dramatically transforming the chemistry of our oceans and the health of its ecosystems. As the oceans absorb carbon dioxide emitted from the burning of

fossil fuels, seawater becomes increasingly acidic. Seawater is already 30% more acidic than pre-industrial levels, and the rate of change is occurring faster than anything experienced in the last 300 million years of the earth's history. Extensive documentation in the scientific literature demonstrates that ocean acidification negatively affects a wide range of marine species by hindering the ability of marine animals to build the protective shells and skeletons they need to survive and by disrupting metabolism and critical biological functions.

4. Water quality criteria promulgated by EPA form the heart of the Clean Water Act. Water quality criteria provide water quality managers with a basis for assessing water body condition, objectively determining when a water body is impaired, and determining acceptable levels of water pollution. Water quality criteria can also serve as targets for water body management and mitigation projects.

5. The potential for irreversible environmental damage caused by ocean acidification requires that water quality criteria keep pace with the best available science. The Clean Water Act requires that EPA update water quality criteria to reflect new scientific information.

6. The APA allows for interested person to participate in the updating of regulations through the submission of a petition for the "issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). Failure to respond to such a petition within a reasonable timeframe constitutes a violation of an agency's duty under the APA, 5 U.S.C. § 555(e). The Center is seeking declaratory judgment that EPA has failed to act within a reasonable timeframe and an order compelling EPA to formally respond to the Center's petition for amendment of water quality criteria and publication of additional guidance on ocean acidification.

## II.    JURISDICTION AND VENUE

7. This court has jurisdiction over this action pursuant to the APA, 5 U.S.C. §§ 701-706, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (action against the United States), 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty), and 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments in cases of actual controversy).

8. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

9. Venue is properly vested in this district pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III. PARTIES

10. Plaintiff Center for Biological Diversity ("Center") is a nonprofit corporation dedicated to the preservation of biodiversity, native species, and ecosystems around the world. The Center's Oceans Program focuses on the protection of marine species and their ocean habitats, including significant efforts to ensure the conservation of imperiled marine species. The Center has worked extensively to protect ocean ecosystems nationwide from various threats including ocean acidification. The Center has engaged in efforts to protect endangered marine species threatened by ocean acidification such as black abalone in California and corals in Florida and Hawaii.

11. The Center currently has more than 48,000 members and over 1.1 million online activists, with members who reside in and/or visit the coastal and marine areas of the United States that are being degraded by ocean acidification. The Center's members and staff use these ocean and coastal areas for research, aesthetic enjoyment, observation, and other recreational, scientific, and educational activities.

12. Center members and staff have researched, observed, photographed, enjoyed the habitat, and sought protection for numerous marine species that are affected by ocean acidification. Center members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of marine animals in the wild and their ocean habitat. The Center brings this action on behalf of itself and its adversely affected members and staff.

13. The Center's interests are injured by EPA's failure to respond to its petition regarding the amendment of water quality criteria and guidance to better address ocean acidification under Section 304 of the Clean Water Act, 33 U.S.C. § 1314, within a reasonable timeframe. This failure constitutes an unreasonable delay within the parameters of the APA. 5 U.S.C. § 555(e). EPA's failure to provide a timely response to petitions like this one effectively subverts the ability of interested persons to meaningfully participate in the rulemaking process. Such delay causes procedural and informational injury to persons who submitted a petition, and obstructs the efficacy of regulations in addressing time sensitive environmental problems that critically impact important natural resources and ecosystem health, such as ocean acidification. Accordingly, the Center suffers from both procedural and informational injuries, and the marine species and habitats enjoyed by the Center and its members are being degraded and harmed by EPA's inaction.

14. Thus, the Center's injuries are directly traceable to EPA's violation of the APA by delaying decision making regarding the update of a rule that is critical to the health and productivity of the ocean and its ecosystems. The aesthetic, scientific, conservation, procedural, and informational interests of the Center and its members are actual, concrete injuries suffered by the Center and its members.

15. The Center's injuries can be redressed by the declaratory relief sought herein. An order compelling EPA to respond to the petition would remedy the Center's procedural and informational injuries and is likely to result in an update of water quality criteria resulting in better management of ocean acidification's impacts on marine life. Updated water quality criteria reflecting current scientific knowledge on ocean acidification will provide a more sound basis for water quality managers to assess and identify waters impaired by ocean acidification and devise strategies to manage ocean acidification and reduce water pollution. Identification and remediation of waters impacted by ocean acidification would focus funding, research, and management on those areas that are vulnerable to ocean acidification, and would improve ocean water quality, better protect ocean waters from further ocean acidification, and increase and improve Center members' opportunities to use and enjoy marine waters and species.

16. Defendant EPA is a federal agency charged with the implementation of the Clean Water Act. EPA is required to act within the parameters of the law, including but not limited to agency duties set forth within the APA. EPA has the authority and ability to remedy the harm inflicted by its actions.

## IV.    LEGAL BACKGROUND

### Clean Water Act

17. Congress enacted the Clean Water Act, 33 U.S.C. §§ 1251 et seq., with the express purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The goals of the Clean Water Act are to guarantee "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation" and to promptly eliminate water pollution. 33 U.S.C. § 1251(a).

18. Toward those goals, the Clean Water Act requires EPA to establish criteria for water quality, 33 U.S.C. § 1314(a)(1), and to publish information that will guide states in their adoption of water quality standards and regulation of water quality, 33 U.S.C. § 1314(a)(2).

19. Under Section 304(a)(1), Congress mandated that the EPA "shall" develop and publish and "from time to time thereafter revise" water quality criteria "accurately reflecting the latest scientific knowledge:"

> (A) on the kind and extent of all identifiable effects on health and welfare including, but not limited to, plankton, fish, shellfish, wildlife, plant life, shorelines, beaches, esthetics, and recreation which may be expected from the presence of pollutants in any body of water, including ground water; (B) on the concentration and dispersal of pollutants, or their byproducts, through biological, physical, and chemical processes; and (C) on the effects of pollutants on biological community diversity, productivity, and stability, including information on the factors affecting rates of eutrophication and rates of organic and inorganic sedimentation for varying types of receiving waters.

33 U.S.C. § 1314(a)(1).

20. Section 304(a)(2) requires that EPA "shall" develop and publish "and from time to time thereafter revise" information on four topics necessary to protection of water quality:

> (A) on the factors necessary to restore and maintain the chemical, physical, and biological integrity of all navigable waters, ground waters, waters of the contiguous zone, and oceans; (B) on the factors necessary for the protection and propagation of shellfish, fish, and wildlife for classes and categories of receiving waters to allow recreational activities in and on the water; (C) on the measurement and classification of water quality; and (D) for the purpose of section 1313 of this title, on the identification of pollutants suitable for maximum daily load measurement correlated with the achievement of water quality objectives.

33 U.S.C. § 1314(a)(2)

21. Water quality criteria and information, and revisions thereof, are required to be issued to the states and published in the Federal Register and otherwise made available to the public. 33 U.S.C. § 1314(a)(3).

22. EPA's water quality criteria and guidance information required by Section 304 of the Clean Water Act serve as a basis for states to adopt and revise water quality standards. 40 C.F.R. § 131.11. States are required to adopt EPA's recommended criteria or provide a science-based explanation for their alternative criteria. 40 C.F.R. § 131.11(b). EPA oversees state water quality standards and must either approve the states' standards or promulgate standards for that state guided by the national water quality criteria. *See*, *e.g.*, 33 U.S.C. § 1313(a)&(b).

23. In turn, state water quality standards establish water quality goals for specific water bodies and serve as the regulatory basis for pollution controls under the Clean Water Act. 40 C.F.R. § 131.2.

24. In sum, EPA's water quality criteria are relevant to nearly every aspect of regulation under the Clean Water Act. As such, updated water quality criteria informed by current science are essential to the proper function of the pollution control schemed envisioned by Congress in the Clean Water Act.

**Administrative Procedure Act**

25. Pursuant to the APA, any interested person has the right to petition for the "issuance, amendment, or repeal" of an agency rule. 5 U.S.C. § 553(e). Subsequently, an agency has the duty to promptly answer such a petition. 5 U.S.C. § 555(e).

26. The APA provides for judicial review of agency actions, 5 U.S.C. § 702, and requires that a court "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## V. FACTUAL BACKGROUND

27. Ocean acidification is drastically altering the chemistry of the world's oceans. The oceans have absorbed approximately one third of human carbon emissions over the past two

centuries, altering seawater chemistry and causing ocean waters to become more acidic. These changes threaten the health of coastal ecosystems and industries that depend on the marine environment.

28. Surveys have documented acidified surface waters along the California, Washington, and Oregon coasts that are corrosive to sea life during certain seasons. Ocean acidification has been linked to a massive die-off of oysters in shellfish hatcheries in the Pacific Northwest. And in the coastal waters of California, ocean acidification has severely eroded the shells of small plankton called pteropods, which contribute to the base of the marine food web.

29. Ocean acidification is also impacted by local conditions that contribute to declining water quality. For example, stormwater and agricultural runoff exacerbate acidification.

30. The impacts to marine species from ocean acidification are numerous. Calcifying organisms, such as shellfish, have difficulty building their shells, and growth, survival, and behavior effects linked to ocean acidification extend throughout the food web.

31. The existing criterion for ocean acidity was developed in 1976. There is a robust body of science on the topic of ocean acidification that has developed in the last two decades and numerous scientific recommendations exist which could assist in the revision of ocean acidification water quality criteria.

32. Scientists support the revision of EPA's water quality criteria to better address ocean acidification. Leading scientists, including those at the National Oceanic and Atmospheric Administration, have recognized that current water quality criteria are inadequate to protect water quality and ocean ecosystems from ocean acidification. According to 20 scientific experts, the existing water quality criteria for pH are not scientifically valid for application to ocean acidification, are not based on current science, nor are they ecologically relevant.

33. Thousands of members of the public have commented to EPA in support of a revision of water quality criteria and further EPA action to address ocean acidification.

34. In 2012, the State of Washington requested that EPA begin an assessment of water quality criteria relevant to ocean acidification.

35. Updated and ecologically relevant water quality criteria that specifically measure the impact of ocean acidification on a water body would improve the EPA and the states' abilities to identify waters impaired by ocean acidification and improve water quality management and water pollution controls. The sooner that EPA and states can take action to identify waters impaired by ocean acidification the sooner that they can take action to manage, mitigate and adapt to ocean acidification.

36. EPA's water quality criteria act as a basis for water pollution controls across the nation. Because states are required to promulgate water quality standards that are at least as strong as the water quality criteria set by the EPA, EPA's failure to update its water quality criteria relevant to ocean acidification is inhibiting effective regulation of pollution across the country and allowing further degradation of seawater quality.

37. EPA has acknowledged that existing water quality criteria are inadequate to protect water quality from the threats of ocean acidification.

38. New ocean acidification criteria could be created based upon current available science. On information and belief, EPA has before it scientific studies relevant to developing ocean acidification specific water quality criteria.

39. In 2010 EPA stated that it would provide guidance to states on ocean acidification, pursuant to its duties under the Clean Water Act, 33 U.S.C. § 1314(a)(2), but has not published such guidance.

40. The Center submitted its petition to EPA regarding the amendment of water quality criteria and publication of additional guidance for ocean acidification under Section 304 of the Clean Water Act, 33 U.S.C. § 1314, on April 17, 2013.

41. The petition "request[ed] that EPA initiate a rulemaking and promulgate water quality criteria for ocean acidification . . . [and] publish information to provide guidance to states on ocean acidification." The Center provided extensive scientific information about ocean acidification and recommended specific updated water quality criteria.

42. More than three years have passed since EPA received the Center's petition and four years since Washington's request for revised water quality criteria for ocean acidification.

43. EPA has failed to provide the Center with a response granting or denying its rulemaking petition.

## VI. CLAIM FOR RELIEF

### 1. (Violations of the Administrative Procedure Act)

44. The Center realleges and incorporates, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

45. Pursuant to the APA any interested person has the right to petition for the "issuance, amendment, or repeal" of an agency rule. 5 U.S.C. § 553(e). The Center utilized this right when it submitted a petition for the amendment of water quality criteria and publication of additional guidance regarding ocean acidification.

46. An agency has a duty to promptly answer such a petition. 5 U.S.C. § 555(e). The APA provides for judicial review of agency actions, 5 U.S.C. § 702, and requires that a court "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

47. EPA has failed to formally respond to the Center's April 2013 petition to amend an EPA rule. EPA's failure to respond to the Center's petition constitutes agency action that is unreasonably delayed and/or unlawfully withheld as provided by Section 706(1) of the APA, and is subject to judicial review. 5 U.S.C. §§ 701-706.

## VII.     PRAYER FOR RELIEF

For the reasons stated above, the Center respectfully requests that the Court:

1. Declare that EPA has violated its duties under the APA by failing to respond to the Center's petition within a reasonable timeframe;

2. Order EPA to formally respond to the Center's petition for amendment of the water quality criteria and publication of additional guidance for ocean acidification;

3. Award the Center its costs of litigation, including reasonable attorneys' fees; and

4. Grant the Center such other relief as the Court deems just and proper.

DATE: September 8, 2016                Respectfully submitted,

/s/ Catherine Kilduff
Catherine Cain Ware Kilduff, DC Bar # 1026160
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street, NW, Suite 1300
Washington, D.C. 20005
Phone: (202) 780-8862
Facsimile: (415) 436-9683
Email: ckilduff@biologicaldiversity.org

Emily Jeffers (CA Bar No. 274222)*
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Phone:  (510) 844-7109
Email:  ejeffers@biologicaldiversity.org

Miyoko Sakashita (CA Bar No. 239639)*

Center for Biological Diversity
1212 Broadway, St. #800
Oakland, CA 94612
Phone: (510) 844-7108
Email: miyoko@biologicaldiversity.org
* *Applications for admission pro hac vice pending*

*Attorneys for Plaintiff*